UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re Kyle Patrick Nolan, Debtor.

Julie M. Kelley,

      Appellant,

v.

Kyle Patrick Nolan,

      Appellee.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 10-2589 ADM

___

Bruce N. Crawford, Esq., Huffman Usem Saboe Crawford & Greenberg, Minneapolis, MN, on behalf of Appellant Julie M. Kelley.

Kyle Patrick Nolan, Minneapolis, MN, *pro se*.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge pursuant to Plaintiff-Appellant Julie M. Kelley's ("Kelley") Appeal [Docket No. 1] of United States Bankruptcy Judge Nancy C. Dreher's Order determining that Defendant-Appellee Kyle Patrick Nolan's ("Nolan") obligations to pay a "cash equalizer" and two attorney fee awards in the parties' divorce proceedings are not domestic support obligations within the meaning of 11 U.S.C. § 523(a)(5). See Findings of Fact, Conclusions of Law and Order for J., May 12, 2010 [Docket No. 1-20] ("Bankruptcy Court Order"). For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.

## II. BACKGROUND

The marriage of Kelley and Nolan was dissolved by decree in Hennepin County District Court ("State Court") on December 31, 2008. See Pl.'s Trial Ex. 7 [Docket No. 1-15] (the

"Decree"). The Decree incorporates the terms of the parties' marriage dissolution, including child support, spousal maintenance, and property division. Id. The Decree states that "[n]either party is awarded child support." Id. at 30. Instead, expenses for the parties' minor child are allocated so that each parent is responsible for one half of the child's medical and dental expenses, medical and dental insurance premiums, and daycare costs. Id. The parties are required on a quarterly basis to exchange proof of payment for child expenses and to provide reimbursement ("quarterly reimbursement payments") as necessary to achieve equal allocation of child-related expenses. With regard to spousal maintenance, the Decree describes both parties as capable of self-support and waives their right to seek maintenance now or in the future. Id. at 4-6. The portion of the Decree relating to property division requires Nolan to pay Kelley $19,853 as a "cash equalizer." Id. at 32-33. The cash equalizer is awarded to Kelley "[i]n consideration of the overall division of marital assets and liabilities." Id. at 33.

The Decree declines Kelley's request for need based attorney fees because "the marital estate has been essentially equalized and [Nolan] is in no better position to pay [Kelley's] attorney fees than she is." Id. at 29. However, the Decree requires Nolan to pay Kelley's counsel $3,000 "for conduct-based attorney fees" based on Nolan's making harassing phone calls to Kelley and her counsel, appearing at Kelley's workplace and at her home in the middle of the night, failing to cooperate in the discovery process, and filing an ethics complaint against Kelley's counsel. Id. at 28.

In July, 2009, the State Court held a post-decree hearing to address issues concerning Nolan's compliance with the Decree. Nolan was held in constructive civil contempt for failing to pay daycare and kindergarten fees for the parties' minor child. Pl.'s Trial Ex. 8 [Docket No.

1-16] ("Contempt Order") at 3.[1]  Kelley also sought to have Nolan held in contempt for failure to pay the cash equalizer and conduct-based attorney fees.  The State Court denied the request but allowed Kelley to offset any quarterly reimbursements for child-related expenses she may owe Nolan against the amount Nolan owed to Kelley for the cash equalizer.  Pl.'s Trial Ex. 9 [Docket No. 1-16] ("August 24, 2009 Order") at 7.  The State Court also ordered Nolan to pay Kelley's counsel $4,000 "as and for additional conduct-based attorney fees . . . for unreasonably increasing the length and cost of th[e] proceeding."  Id. at 8.

Nolan filed for Chapter 13 bankruptcy relief on August 4, 2009.  Pl.'s Trial Ex. 1 [Docket No. 1-14].  On November 2, 2009, Kelley filed an adversary complaint seeking *inter alia* to have the cash equalizer and two attorney fee awards excepted from the bankruptcy discharge as domestic support obligations under § 523(a)(5) of the Bankruptcy Code.[2]  Compl. [Docket No. 1-1] at 3.  The Bankruptcy Court held a trial on May 12, 2010 and found that the challenged debts are not domestic support obligations.  Bankruptcy Court Order at 1-2.  Kelley appeals the Bankruptcy Court Order.

### III.  DISCUSSION

**A.    Standard of Review**

A district court reviews a bankruptcy court's "legal conclusions *de novo*, and its findings

---

[1] Prior to the execution of his sentence, Nolan purged the contempt by paying $2,200 to his child's daycare and extended kindergarten providers.  Contempt Order at 3.

[2] At trial, the Bankruptcy Court noted that the request to determine dischargeability was premature given the early stage of Nolan's Chapter 13 case, and thus treated the action as one for declaratory judgment on the issue of whether the cash equalizer and attorney fee awards constitute domestic support obligations under 11 U.S.C. § 523(a)(5).  Tr. of May 12, 2010 Proceedings [Docket No. 1-29] ("Transcript") at 16-18.

3

of fact under the clearly erroneous standard." In re Muncreif, 900 F.2d 1220, 1224 (8th Cir. 1990). Whether a debt constitutes a domestic support obligation "is a question of fact to be decided by the Bankruptcy Court . . . . A finding of fact on such a question may be set aside by the District Court or [Circuit Court] only if clearly erroneous." Williams v. Williams (In re Williams), 703 F.2d 1055, 1057-58 (8th Cir. 1983). See also Adams v. Zentz (In re Zentz), 963 F.2d 197, 200 (8th Cir. 1992) (stating district and circuit courts must accept the bankruptcy court's findings as to whether a debt is a support obligation unless such findings are clearly erroneous); Holliday v. Kline (In re Kline), 65 F.3d 749, 750 (8th Cir. 1995) (noting whether an obligation is intended to serve as support is a finding of fact reviewed only for clear error). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir. 1996).

**B.** **Legal Analysis**

Kelley argues the bankruptcy court erred in determining the cash equalizer and two attorney fee awards were not domestic support obligations.

Section 523(a)(5) of the Bankruptcy Code provides an exception to the bankruptcy discharge for debts that are domestic support obligations. 11 U.S.C. § 523(a)(5). By definition, a domestic support obligation must be "in the nature of alimony, maintenance, or support . . . of [a] spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated." 11 U.S.C. § 101(14A)(B).

In determining whether a particular debt constitutes a domestic support obligation, "the crucial issue is the function the award was intended to serve." Williams, 703 F.2d at 1057.

4

Factors evaluated by courts in discerning an award's intended function include: whether the dissolution decree contains a separate provision for child or spousal support; whether the obligation is owed in a lump sum or in periodic payments; whether the obligation is conditional; the parties' relative financial conditions and employment histories; and whether a former spouse and children would have difficulty subsisting without the payments. See, e.g., Morel v. Morel (In re Morel), 983 F.2d 104, 105 (8th Cir. 1992) (finding a debt was not for support because the decree imposing the obligation contained a separate provision for alimony, the debt was payable in a lump sum, and the obligation was not conditioned on the death or remarriage of the spouse); Kline, 65 F.3d at 751 (determining an attorney fee award was based partly on the financial resources of the parties and thus in the nature of support); Tatge v. Tatge (In re Tatge), 212 B.R. 604, 608 (B.A.P. 8th Cir. 1997) (listing the factors assessed by the court in determining that a debtor's obligation to make monthly mortgage payments was intended for support).

**1. Cash Equalizer**

The Bankruptcy Court found that the $19,853.00 cash equalizer is not a domestic support obligation because child support, maintenance, and alimony were waived under the Decree,[3] and because the Decree "specifically calls [the cash equalizer] a property settlement, an equalizer for property disputes." Transcript at 72.

The record amply supports the Bankruptcy Court's determination. The cash equalizer is

---

[3] Kelley contends the Bankruptcy Court's statement that child support was waived under the Decree is erroneous. However, this Court need not reach that issue, because several other factors support the Bankruptcy Court's ultimate determination that the cash equalizer and attorney fee awards are not domestic support obligations. As such, the accuracy of the statement that child support was waived does not materially affect this Court's conclusion that the Bankruptcy Court Order is not clearly erroneous.

5

awarded under a provision in the Decree entitled "PERSONAL PROPERTY, ACCOUNT AND DEBT DIVISION," as opposed to the provisions titled "CHILD SUPPORT" and "SPOUSAL MAINTENANCE." See Decree at 33. Additionally, the Decree describes both parties as capable of self-support, id. at 3-4, states that "[n]either party is awarded child support," id. at 30, and awards the cash equalizer "[i]n consideration of the overall division of marital assets and liabilities." Id. at 33. Thus, the Bankruptcy Court's determination that the cash equalizer was not intended to serve as a domestic support obligation is not clearly erroneous.

Kelley argues the State Court's August 24, 2009 Order converted the cash equalizer into a support obligation. That Order allowed Kelley to offset quarterly reimbursements for child expenses she would otherwise owe to Nolan against the cash equalizer. August 24, 2009 Order at 3-4. However, the clear language of the August 24, 2009 Order does not support Kelley's argument. The August 24, 2009 Order allowing the offset refers to the cash equalizer as an "unpaid property award." Id. at 4. Additionally, the August 24, 2009 Order discusses Nolan's prior contempt for failure to pay child-related expenses but declines to hold Nolan in contempt for failure to pay the cash equalizer because "[c]ontempt is not available to enforce a family court property award." Id. at 3. Thus, the Bankruptcy Court's finding that, by allowing offsets, the State Court merely intended to "establish a way of getting [the cash equalizer] paid," but "didn't change the nature of the obligation" to one for domestic support, Transcript at 73, is not clearly erroneous.

Kelley also argues the cash equalizer should be deemed a domestic support obligation because it was awarded to equalize the student loan debt required to be paid by Kelley, and Kelley's student loans were used to pay for household expenses while the parties were married

6

and Nolan was unemployed. Kelley urges the cash equalizer is needed to support herself and her child, and notes that if she were to file for bankruptcy she would not receive the same fresh start as Nolan because her student loan debt is not dischargeable in bankruptcy. This argument fails because it was not raised in the Bankruptcy Court, is not accompanied by evidentiary support, and contradicts the State Court's finding in the Decree that Kelley is capable of self-support.

**2. Attorney Fees**

Kelley also argues the Bankruptcy Court erred in finding the attorney fee awards are not domestic support obligations. Kelley contends that attorney fees awarded in custody litigation are non-dischargeable because the litigation affects the child's welfare and are thus in the nature of support.

Attorney fees incurred in child custody litigation may be determined to be non-dischargeable, even if owed to a third party, if such fees are in the nature of support. Williams, 703 F.2d at 1057; Kline, 65 F.3d at 751; Zentz, 963 F.2d at 200. The attorney fee award in Williams was found to be one for support because the party receiving the fee award was unemployed, in poor health, and needed the award to assist her in meeting monthly living expenses. Williams, 703 F.2d at 1057. Similarly, the attorney fee award in Kline was determined to be a domestic support obligation because "the decree of dissolution specifically provided that the attorney fee order was based, in part, on the financial resources of the parties." Kline, 65 F.3d at 751. In contrast, the attorney fee award in Zentz was determined not to be in the nature of support because the award was imposed as a result of the mother's conduct and did not focus on the child's health, well-being, or best interests. Zentz, 963 F.2d at 200.

Here, the Bankruptcy Court determined the $3,000 fee award "was for conduct-based

activities of [Nolan]" and not in the nature of support. Transcript at 74. The Bankruptcy Court noted that the Decree does not mention the $3,000 fee award being for child support, maintenance, or alimony, and that no evidence was provided to suggest that some or all of the award was attributable to support. Id. at 75. In fact, the Bankruptcy Court found the record to evince "a strong suggestion that these two parties were able to take care of themselves and should go on their way." Id. at 76.

The Bankruptcy Court's finding as to the $3,000 attorney fee award is well supported by the record and not clearly erroneous. The Decree specifically declined to award need-based attorney fees. Decree at 29. Moreover, financial disparity between parties, as found in Williams and Kline, is not present here. Finally, contrary to Kelley's assertion, the fees awarded were not incurred for litigation that promoted the child's interest; rather, they were awarded to compensate Kelley and her counsel for misconduct by Nolan that was directed at them. See Decree at 28 (awarding attorney fees in the amount of $1,000 for harassing phone calls, $1,000 for unwelcome contacts and threats, and $1,000 for difficulty in the discovery process).

The Bankruptcy Court similarly determined that the $4,000 attorney fee award provided in the August 24, 2009 Order was not in the nature of support. Kelley contends this finding was clearly erroneous because the post-Decree hearing which resulted in the August 24, 2009 Order "was directly related to the support of the child." Appellant's Br. [Docket No. 4] at 11. However, the Bankruptcy Court found that the August 24, 2009 Order addressed "myriad" issues and included no indication that the fees were awarded for the support of Kelley or the parties' child. Transcript at 77.

Kelley further argues the Bankruptcy Court erroneously relied on Nab v. Manard-Hester

8

(In re Manard-Hester), Adv. No. 08-8062, 2009 WL 2501142 (Bankr. D. Neb. Aug. 12, 2009) for the proposition that the $4,000 attorney fee award is not a domestic support obligation. The Bankruptcy Court stated that the attorney fees in Manard-Hester "were in fact discharged," Transcript at 77. However, the attorney fees in Manard-Hester were found to be in the nature of support and therefore not discharged. See Manard-Hester, 2009 WL 2501142, at *4.

This apparent mistake by the Bankruptcy Court does not constitute clear error for at least two reasons. First, it is possible Judge Dreher merely misspoke when she initially summarized the holding of the Manard-Hester case, because she later stated that the fee award in Manard-Hester "constitutes a *non*-dischargeable domestic support obligation." Id. at 78 (emphasis added). Second, even if mistaken about the outcome in Manard-Hester, the Bankruptcy Court relied on that case for the limited proposition that a bankruptcy court must discern the intent behind a state court's fee award in determining whether the award is one for support.[4] See Trancsript at 77 ("Judge Mahoney does say, in interpreting an order of another court, it's not an easy task."); Id. at 78 ("I'm faced with this question of trying to discern what a [state court] judge intended to say."). The Bankruptcy Court concluded that neither the Decree nor the August 24, 2010 Order contained language "that would indicate that any of these awards was intended in any way to . . . keep food in the mouth of the child, [or] keep the former spouse from being destitute." Id. at 78. Based on the entire evidence of record, Judge Dreher's misstatement of the Manard-Hester holding does not leave this Court with "the definite and firm conviction that a mistake has been committed." Chakales, 79 F.3d at 728. The Bankruptcy Court's analysis

---

[4] While Judge Dreher did describe Manard-Hester as involving a "somewhat similar situation," Transcript at 77, she did not specify any factual similarities or distinctions which may have served as the basis for her decision. See Id. at 77-78.

of the $4,000 fee award comports with controlling law in the Eighth Circuit for determining the nature of marital dissolution obligations, and the factual conclusion reached by the Bankruptcy Court is well supported by the record and not clearly erroneous.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Kelley's Appeal [Docket No. 1] is **DENIED**;

2.  The Bankruptcy Court's Order of May 12, 2010 is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 1, 2010.